## SCHECK v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. June 5, 1925.)

No. 3180.

1. **Intoxicating liquors** ⊜≈238(1)—**Unlawful possession held for jury.**

Evidence to sustain a charge of unlawful possession *held* sufficient to require submission of the case to the jury.

2. **Criminal law** ⊜≈394 — **Testimony of state officers of facts discovered without search warrant held competent.**

Testimony of state officers *held* not inadmissible, because based on facts learned through a search of defendant's premises without a search warrant.

In Error to the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Criminal prosecution by the United States against Howard Scheck. Judgment of conviction, and defendant brings error. Reversed as to one count of indictment, and affirmed as to another.

Frederic M. P. Pearse, of Newark, N. J., and Dilworth P. Hibberd, of Philadelphia, Pa. (Daniel W. Applegate, of Newark, N. J., on the brief), for plaintiff in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below Howard Scheck was indicted, convicted, and sentenced on one count (second in the indictment) for receiving and concealing intoxicating liquor which he knew had been fraudulently imported, and on another count (fourth in the indictment) for the unlawful possession of intoxicating liquor. Thereupon he sued out this writ, and the question involved is whether the court below erred in declining to give binding instructions to the jury to acquit him in each of said counts.

The proofs showed that Scheck was the lessee of a club house on the New Jersey coast near Longport; that connected with the club house were a number of individual garages, each of which had a motorboat slip, which was entered from an inlet or public harbor; that on the night of February 2d the premises were watched by federal prohibition officers and New Jersey state troopers, who on the next morning found large quantities of whisky (six bottles in each small gunny sack bag) on the wharves in front of the garages, some in the club house, and some in automobiles. We have carefully examined the testimony, and we find no testimony whatever showing that this whisky was imported, or that it bore any marks showing foreign origin. We are therefore of the opinion the evidence and sentence under the second count, viz. fraudulent importation, cannot be sustained. It is accordingly reversed.

[1] Turning to the other charge, it appears that Scheck went on the stand and testified he knew absolutely nothing about the whisky; that he never had possession of it, and did not know to whom it belonged; that he slept in his own home that night, and was not there at the boat house at the early morning hours, when the tide allowed boats to come into the slips. He called witnesses in support of his alibi and as to his character. If his own testimony and that of his witnesses as to his alibi had been believed by the jury, which it evidently was not, he was entitled to a verdict of acquittal. The question, therefore, before us, is whether the government produced evidence which required the submission to the jury of the question of his guilt.

Without entering into details, it suffices to say there was testimony tending to show that Scheck was the lessee and had the keys of the club house, and rented the garages and slips to others, and had control of the approaches to them; that on the night of February 2d he was coming and going in his sedan Durant automobile along the road leading to the club house and his car had no lights; that he stated to a prohibition officer on the road that he was patroling the road, looking for rum runners, and represented himself as a coast guard; that he had a revolver in his hands at that time, and the

next morning attempted to conceal it; that approaching motorboats could only get into the slips in the early morning hours, owing to the tide; that his Durant car was last seen that night standing in front of the club house; that a light was kept burning on the second story of the club house from midnight until about half past 3 or 4 o'clock; that the room where the light was burning proved, in the morning, to be a kitchenette bearing evidence of a meal having been lately served; that motorboats without lights and muffled oars were heard in the neighborhood of the slips at an early hour of the morning of the 3d; that when the officers came to the premises, about 7 to half past 7, they found on the wharf large quantities of whisky (in six bottles in burlap bags), some in two cars, in addition to champagne and créme de menthe. They also found some whisky in the boat house and two bottles in Scheck's Durant car, which was then standing in front of the club house. It was further proved that he admitted to the officers he had the keys of the club, advised them not to enter the building, said there were men in it, and someone might get hurt if they went in; but when on the stand he gave no explanation how the man Camaratta, who was found in a closet, got into the house, of how the whisky got into the house, or into his sedan car, or of how he came to know all about the liquors, although it was proved he admitted he so knew, stating to the officers: "My God, don't blame me, and I will show you just where it is. I will show you where all of it is; just give me a chance."

Without entering on further details, it suffices to say that we think the case was one for submission to the jury. Accordingly, the sentence of judgment pronounced on its verdict on the fourth count is affirmed.

[2] We have not overlooked the contention that the testimony of two witnesses, Wilson and O'Donnell, was wrongfully admitted, because being as to facts and circumstances learned when they obtained access to the building by virtue of a search warrant afterwards adjudged illegal. But the contention overlooks the proofs. These men were New Jersey state troopers, and testified they were acting under the instructions of their officers, which were to protect the prohibition officers, just as they would any other citizens, and prevent them from being shot. They testified they acted under no search warrant, knew of none, and that they entered the premises through an open door at the rear or water front of the premises, and made no entry under a search warrant.

In view of these proofs, the court committed no error in refusing to sustain the objection made to receiving their testimony.